# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

GARY ARNETT, SHELLY ARNETT,　　　)
and JOHN PAUL ARNETT, by next　　)
friend, GARY ARNETT,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　**Plaintiffs,**　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
**v.**　　　　　　　　　　　　　　　　　　　　　)　　　　　NO.　　98-1263 B/An
　　　　　　　　　　　　　　　　　　　　　　　　　)
**GARY MYERS, as Executive Director**　)
**of the Tennessee Wildlife Resources**　)
**Agency, et al.,**　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　**Defendants.**　　　　　　　　　)

---

## ORDER DENYING DEFENDANTS' MOTION FOR AN ORDER
## COMPELLING JOINDER OF A NECESSARY PARTY

---

Before the Court is Defendants' Motion for an Order Compelling Joinder of a Necessary

Party filed on April 6, 2005. Specifically, the Defendants wish to join the United States of

America, Department of the Interior, Fish and Wildlife Services as a necessary party to this

litigation pursuant to Rule 19 of the Federal Rules of Civil Procedure. United States District

Judge J. Daniel Breen referred this matter to the United States Magistrate Judge for

determination. For the following reasons, the Motion is **DENIED.**

### BACKGROUND

### Reelfoot Lake

Reelfoot Lake was formed as the result of an earthquake in 1810. "The result of the

earthquake was to lower the lands upon which the waters of the lake rest several feet below the

1

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on 12/22/05

252

surrounding lands. The submergence of the land [by the Mississippi River] carried down the forest timber growing upon it, and these timbers and their remains are still in the lake. *State ex rel. Cates v. West Tennessee Land Co.*, 158 S.W. 746, 747 (Tenn. 1913). In *State ex rel. Cates v. West Tennessee Land Co.*, decided in 1913, the Tennessee Supreme Court held that the lake was a navigable stream such that private ownership of either its waters or the land underlying them is not permitted. *Id.* at 749. The Court held, however, that "landowners whose titles include land derived from the 1788 Doherty grants[1] from North Carolina prior to the formation of Reelfoot Lake, land now submerged by the lake, 'would be entitled to its [their land's] use and enjoyment as long as they can reasonably identify it and fix its boundaries.'" *Arnett v. Myers*, 281 F.3d 552, 557-558 (6th Cir. 2002) (quoting *Cates* at 752).

Between 1925 and 1931, the State of Tennessee also condemned a buffer zone around most of Reelfoot Lake and took fee simple to the land. *Stroud v. State of Tenn.*, 279 S.W.2d 82, 87 (Tenn. Ct. App. 1955). Thus, by virtue of court orders and condemnation proceedings, the State owns land around the majority of Reelfoot Lake that lies within the State to the ordinary low water mark of 1913. The State did not, however, condemn a buffer zone on certain properties and there are some small tracts where the condemnation is in dispute. Hamilton Resp. p. 4. Thus, the State owns a buffer zone on all land around Reelfoot Lake except that on which there was no condemnation or where landowners are disputing the condemnation.

## Procedural History

---

[1]In 1788, the State of North Carolina granted George Doherty several thousand acres of land, including that which is now owned by the Plaintiffs. *Hamilton v. Myers*, 281 F.3d 520, 523, n.1 (6th Cir. 2002).

2

The Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 against Gary Meyers, the executive director of the Tennessee Wildlife Resources Agency ("TWRA") and the members of the Tennessee Wildlife Resources Commission ("TWRC") in their official capacities in September of 1998. They also sued employees of TWRA individually. Specifically, the Plaintiffs allege that they assumed ownership of three abandoned duck blinds located on Reelfoot Lake in Lake County, Tennessee, and used them as part of their guide business. When the Defendants removed the duck blinds in November of 1997 on the grounds that they were not registered permanent blind sites and therefore not permitted under TWRC regulations, the Plaintiffs claimed that the Defendants actions denied them due process, took their property without compensation, deprived them of the right to equal protection of the law, and violated their right to free speech. The relief the Plaintiffs sought included a declaratory judgments that they owned the duck blinds, that the TWRC's registration system was unconstitutional, and that they have Doherty riparian rights.

On January 12, 2000, the district court granted Defendants' Motion for Summary Judgment, but the Sixth Circuit Court of Appeals reversed the district court's decision in part and remanded the case for continued proceedings. Specifically, the Court of Appeals reversed the dismissal of the Plaintiffs' First Amendment claims and the holding that the Plaintiffs did not have a constitutionally protected property interest in the duck blinds on the basis that there were material facts in dispute. The Court of Appeals remanded the case for further proceedings and chief among the issues to be decided is the location of the 1913 ordinary low water mark of Reelfoot Lake. The location of this water mark will determine whether the Plaintiffs have riparian fishing rights pursuant to a Doherty land grant. *Arnett* at 568.

3

The Plaintiffs contend that they own real property on Reelfoot Lake that extends to the 1913 ordinary low water mark of Reelfoot Lake which they believe is between 276' and 277.5' mean sea level. Defendants, on the other hand, contend that the 1913 ordinary low water mark is approximately 282.4' mean sea level. According to the Plaintiffs, the outcome of this determination will affect the Plaintiffs' ability to use their property or the water over their property.

**The Lease**

On August 28, 1941, the State of Tennessee entered into a lease agreement ("Lease") with the United States of America, Department of the Interior, Fish and Wildlife Services ("USFWS") in order to carry out the provisions of the Migratory Bird Conservation Act, 16 U.S. C. §§ 715-715s. The State leased to the USFWS portions of Reelfoot Lake, commonly referred to as the "Reelfoot National Wildlife Refuge," and gave them the authority and responsibility to manage the water level of the lake. The Lease was for a term of seventy-five (75) years and is set to expire in 2016. The lands leased to the USFWS comprise approximately 7,606 acres. Of those acres, approximately 4,883 acres are part of the water surface of Reelfoot Lake.

**The Present Motion**

Defendants filed this Motion on April 6, 2005, two months before trial in this matter was to take place. The Defendants claim that the USFWS is a necessary party to this action because a determination by the Court as to the ordinary low water mark will affect the number of acres around Reelfoot Lake that the State of Tennessee owns, thereby possibly reducing the number of acres that the USFWS is able to lease and impacting its ability to control and maintain the Reelfoot National Wildlife Refuge. Specifically, the Defendants claim that, as a result of the

4

Lease, the USFWS has an interest in the subject matter of this case and its absence from the case may impede its ability to protect that interest. Secondly, the Defendants contend that the absence of USFWS from this litigation may leave the Defendants subject to a substantial risk of inconsistent obligations. Defs.' Mtn. p. 2.

Plaintiffs refute the Defendants' claim that a determination that the ordinary low water mark is between 276' and 277.5' will affect the land that is leased by the USFWS. They note that the land affected by such a ruling will only be that which lies within the Doherty Grant area.[2] Further, none of this property falls within the property that has been leased by the State of Tennessee to the USFWS. In addition, the Plaintiffs point out that the USFWS has never taken steps to intervene in this matter, which has been ongoing since 1998.[3]

## ANALYSIS

Rule 19(a) of the Federal Rules of Civil Procedure provides for joinder of a person as a party to an action when they are needed for a just adjudication. He or she is to be joined if "complete relief cannot be accorded among those already parties" in his or her absence or if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action may (i) ... impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed. R. Civ. P. 19(a). "If the

---

[2]The disputed property lines within the Doherty Grant area only comprise between two (2) and five (5) percent of Reelfoot Lake's shoreline. Hamilton's Resp. p. 3.

[3]Plaintiffs asset that the USFWS was put on notice concerning the litigation because subpoenas were issued by the Plaintiffs for certain documents Defendants claimed were in the USFWS possession. The USFWS refused to respond to the subpoena. Arnetts' Resp. p. 2

person has not been so joined, the court shall order that the person be made a party." *Id.* The Court of Appeals for the Sixth Circuit has set forth a three-step inquiry to determine whether compulsory joinder of a party is required under Rule 19. *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). First, the court must determine whether the absent party is a necessary party under Rule 19(a). *Id.* Second, if the party is necessary, the court must then decide if joinder will deprive the court of subject matter jurisdiction. *Id.* Third, if the party cannot be joined or if joinder will deprive the court of subject matter jurisdiction, the court must proceed to Rule 19(b) and determine whether it may proceed without the absent party or dismiss the case due to the indispensability of that party. *Id.* Thus a person "is only indispensable, within the meaning of Rule 19 if (1) it is necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee." *Id.* (quoting *4 Moore's Federal Practice* §§19.02[3][c], at 19-22).

First, the Court notes that this case was filed in 1998 and has been actively ongoing since that time. When the Defendants filed their present Motion, trial was two months away.[4] In their Memorandum in support of the Motion, Defendants recognize that their Motion was made well beyond the date to add parties per the Court's Scheduling Order but, in their defense, claim that recent discussions with the Plaintiffs' counsel made them aware that there was more at stake than the Plaintiffs' land by virtue of non-mutual offensive collateral estoppel that may be used by other landowners to establish their property line at the 276' - 277.5' ordinary low water mark. This conversation, however, took place in January of this year, nearly three months before the Defendants finally filed this Motion. Additionally, the Plaintiffs claim that the Defendants have

---

[4]Since that time, the trial date has been continued.

been on notice since the inception of this litigation, seven (7) years ago, that the Plaintiffs

contended in pleadings, testimony, and exhibits that there was a substantial difference in the

parties' positions as to the location of the ordinary low water mark. Arnetts' Resp. p. 3.

Second, as Plaintiffs point out, none of the land in question lies within, or even adjacent

to, the land leased to the USFWS. As such, any determination concerning the ordinary low water

mark will only affect the use that the Plaintiffs may make of the land they own up to that mark.

It will not diminish the number of acres that the USFWS has leased from the State of Tennessee

nor will it impact the USFWS ability to maintain and control the Reelfoot National Wildlife

Refuge. Although the Defendants claim that a ruling in favor of the Plaintiffs on the issue of the

ordinary low water mark will deprive the USFWS of as much as 4,431 acres of the water surface

area of the Reelfoot National Wildlife Refuge, the Court is not persuaded. The State owns a

buffer zone around a vast majority of the portion of the lake that lies within this State and has

owned this land since the 1920s and 1930s. Only a small portion is still owned by private

landowners. The Doherty Grant area in question is minuscule in comparison with that owned by

the State and is not even adjacent to the area leased to the USFWS. In addition, Plaintiffs state

that they are not seeking that the lake be drained, lowered, or diminished in size in any way.

Hamiltons' Resp. p. 5. Neither are they seeking a declaration of private ownership of the lake

bed.[5] Rather, they are asking the Court to establish the point to which their property line runs

based on the ordinary low water mark of 1913. *Id.* As the Sixth Circuit stated in *Arnett v.*

*Myers*, "If the [Plaintiffs] prevail at trial, Reelfoot Lake will remain within the sovereign control

---

[5]Plaintiffs note that this issue of ownership was already decided in their favor in 1913.
See *Cates*, 158 S.W. 746.

of the State of Tennessee, and will continue to be subject to Tennessee's regulatory authority."
*Arnett* at 568.

Third, the USFWS has never taken steps to intervene in this matter pursuant to Rule 24 of the Federal Rules of Civil Procedure. Rule 24 allows a party to intervene as a matter of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24. Due to the fact that this case has been in litigation for over seven (7) years, that a decision concerning that case was handed down by the Sixth Circuit in 2002, and that the USFWS was served with a subpoena by the Plaintiffs, it is likely that the USFWS is aware of the case and has chosen not to intervene as it does not have any interest to be protected.

Fourth, although this Court can find no authority directly on point mandating that a lessee of land is an indispensable party to an action concerning that land, the Court does find the following language from *Video Towne Inc. v. RB-3 Associates* to be analogous to the present controversy in front of the Court:

> "[A] person does not become indispensable party to an action to determine rights under a contract simply because determination of the action will affect that person's rights under a separate or subsequent contract -- **including the rights of a third party lessee to property at issue in the original action**." *Video Towne Inc. v. RB-3 Associates*, 125 F.R.D. 457 (S.D. Ohio 1988) (Emphasis added).

Assuming that the land leased by USFWS would be affected by a determination by the Court in favor of the Plaintiffs on the location of the ordinary low water mark, the fact that they are a lessee of this land does not automatically make them an indispensable party to this litigation.

## CONCLUSION

USFWS is not an indispensable party to the litigation between Plaintiffs and Defendants concerning the ordinary low water mark of Reelfoot Lake. In addition to the fact that the Defendants have been on notice for approximately seven (7) years that the Plaintiffs contend the ordinary low water mark is different from that maintained by the Defendants and USFWS has never chosen to intervene in this action, the land that USFWS leases will not be affected by any determination in favor of the Plaintiffs concerning this mark. Therefore, Defendants Rule 19 Motion to join the USFWS as a party to this case is **DENIED**.

**IT IS SO ORDERED.**

S. THOMAS ANDERSON
UNITED STATES MAGISTRATE JUDGE

Date: December 19, 2005

9

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 252 in case 1:98-CV-01263 was distributed by fax, mail, or direct printing on December 22, 2005 to the parties listed.

---

Robert M. Fargarson
NEELY GREEN FARGARSON BROOKE & SUMMERS
65 Union Ave.
Ste. 900
Memphis, TN 38103--054

Sara Barnett
SPRAGINS BARNETT COBB & BUTLER
P.O. Box 2004
Jackson, TN 38302--200

Charles H. Barnett
SPRAGINS BARNETT COBB & BUTLER
P.O. Box 2004
Jackson, TN 38302--200

Honorable J. Breen
US DISTRICT COURT